# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILIP R. SHAWE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 1:17-cv-01348-JEJ |
| | : |
| POTTER ANDERSON & CORROON LLP and KEVIN R. SHANNON, | : |
| | : |
| Defendants. | : |
| | : |

**OPENING BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Jennifer Gimler Brady (#2874)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
jbrady@potteranderson.com

*Attorneys for Defendants Potter Anderson & Corroon LLP and Kevin R. Shannon*

Dated: November 7, 2017
5434674 / 44505

# **TABLE OF CONTENTS**

                                                                                                        **Page**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................................1

SUMMARY OF THE ARGUMENT ............................................................................................1

STATEMENT OF FACTS .............................................................................................................2

ARGUMENT .................................................................................................................................4

I.     IMPROPER MOTIVES BEHIND THE COMPLAINT ......................................................4

II.    THE COMPLAINT'S CLAIMS AND CONTENTIONS ARE
       FRIVOLOUS .......................................................................................................................5

III.   THE COMPLAINT'S FACTUAL ALLEGATIONS LACK ANY
       EVIDENTIARY BASIS ....................................................................................................7

IV.   SANCTIONS ARE WARRANTED ....................................................................................9

CONCLUSION ..............................................................................................................................13

## **TABLE OF AUTHORITIES**

**CASES**

Page(s)

*Castro v. United States*,
   775 F.2d 399 (1st Cir. 1985) ................................................................................ 11

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
   857 F.2d 191 (3d Cir. 1988) .................................................................................. 10

*In re Martin-Trigona*,
   737 F.2d 1254 (2d Cir. 1984) ................................................................................ 11

*In re Shawe & Elting LLC*,
   2015 WL 4874733 (Del. Ch. Aug. 13, 2015), *aff'd sub nom., Shawe v. Elting*,
   157 A.3d 152 (Del. 2017) ............................................................................. 2-3, 5, 7

*In re Shawe & Elting LLC*,
   2016 WL 3951339 (Del. Ch. July 20, 2016), *aff'd sub nom.*, *Shawe v. Elting*,
   157 A.3d 142 (Del. 2017) ........................................................................................ 3

*In re Walt Disney Co. Derivative Litigation*,
   907 A.2d 693 (Del. Ch. 2005) ................................................................................. 8

*Lacks v. Fahmi*,
   623 F.2d 254 (2d Cir. 1980) .................................................................................. 11

*Lieb v. Topstone Indus., Inc.*,
   788 F.2d 151 (3d Cir. 1986) .............................................................................. 10-11

*Malley v. New York City Bd. of Educ.*,
   112 F.3d 69 (2d Cir. 1997) .................................................................................... 11

*Mazur v. Woodson*,
   191 F. Supp. 2d 676 (E.D. Va. 2002) .................................................................... 11

*Pentagen Techs. Int'l Ltd. v. United States*,
   172 F. Supp. 2d 464 (S.D.N.Y. 2001) ................................................................... 11

*Shawe v. Elting*,
   157 A.3d 142 (Del. 2017) ........................................................................................ 3

*Shawe v. Elting, et al.*,
   2017 WL 2882221 (Sup. Ct. N.Y. Cty. June 29, 2017) ..................................... 4-6

*Shawe v. Kramer Levin Naftalis & Frankel LLP, et al.*,
   No. 151025/2017 (Sup. Ct. N.Y. Cty. Mar. 31, 2017) ............................................ 4

*Shawe v. Pincus*,
    2017 WL 4251440 (D. Del. Sept. 26, 2017) .................................................................5

*Simmerman v. Corino*,
    27 F.3d 58 (3d Cir. 1994) ...........................................................................................10

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*,
    67 F. Supp. 3d 637, 652 (D. Del. 2014) ................................................................. 9-10

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ....................................................................................10

**RULES**

FED. R. CIV. P. 11 ............................................................................................... *passim*

FED. R. CIV. P. 11(b) ......................................................................................................11

FED. R. CIV. P. 11(b)(1)-(3) ............................................................................................9

FED. R. CIV. P. 11(c)(1) .................................................................................................10

FED. R. CIV. P. 11(c)(1) .................................................................................................10

FED. R. CIV. P. 11(c)(4) .................................................................................................10

## NATURE AND STAGE OF PROCEEDINGS

On September 24, 2017, Christopher M. Coggins of Coggins Law LLC filed a one-count complaint (the "Complaint") in this Court on behalf of Plaintiff Philip R. Shawe against Defendants Potter Anderson & Corroon LLP ("PAC") and Kevin R. Shannon. The Complaint has no basis in law or fact and was filed for an improper purpose. Accordingly, PAC and Shannon, by and through their undersigned counsel, hereby move for sanctions pursuant to Federal Rule of Civil Procedure 11 against Shawe and Coggins. In support of the motion (the "Motion"), Defendants submit this opening brief.

## SUMMARY OF THE ARGUMENT

The Complaint is frivolous, harassing, and vexatious -- among many other descriptors of a bad-faith filing. It is an attempt by Shawe and his counsel to re-litigate matters already decided by the Delaware state courts. It should be summarily dismissed for a host of reasons, including the *Rooker-Feldman* doctrine, *res judicata*, various abstention doctrines, and for failure to state a claim. But dismissal alone will not effectively stop Shawe and those aligned with him from creating "constant pain" for Shawe's business partner and those associated with her, including, now, PAC and Shannon, her Delaware counsel. Indeed, Shawe already has been sanctioned by the Delaware Court of Chancery in excess of $7 million for extreme litigation misconduct (including lying under oath) -- a decision that was affirmed by the Delaware Supreme Court. But that has not stopped Shawe, his mother, and/or certain of his associates from initiating repetitive and meritless litigation attempting to challenge the Delaware state courts' decisions in other jurisdictions.

Therefore, PAC and Shannon have filed the Motion and request that the Court not only dismiss the Complaint with prejudice, but also award monetary sanctions against Shawe and Coggins and enter a nationwide filing injunction against them permanently enjoining them and those acting on their behalf from attempting to re-litigate matters already decided by other courts. Anything short of a nationwide filing injunction will not effectively prevent Shawe from continuing to abuse court processes without regard to the meritlessness of his claims or the costs and burdens he imposes on his litigation targets and the limited resources of the courts.

## STATEMENT OF FACTS

### *Background Leading To The Complaint*

By way of background, Shawe and Elizabeth Elting are the founders, principal owners, and co-CEOs of TransPerfect Global, Inc. ("TPG"). In April 2014, Elting retained PAC as Delaware counsel to represent her in connection with numerous disputes with Shawe concerning the management and control of TPG. In May 2014, Elting and Shawe commenced litigation in the Delaware Court of Chancery in which, among other things, Elting petitioned the Court to dissolve TPG and appoint a custodian to sell TPG because of intractable deadlock between the parties.

Following a six-day trial, Chancellor Andre G. Bouchard issued a 104-page memorandum opinion in August 2015, granting Elting's petition for dissolution of TPG and entering judgment in her favor on the claims asserted against her by Shawe. The Court held that "the state of management of the corporation has devolved into one of complete dysfunction between Shawe and Elting, resulting in irretrievable deadlocks over significant matters that are causing the business to suffer and that are threatening the business with irreparable injury[.]" *In re Shawe & Elting LLC*, 2015 WL 4874733, at *1 (Del. Ch. Aug. 13, 2015) (attached as Exhibit A), *aff'd sub*

*nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017) (attached as Exhibit B).  The Court appointed a custodian to sell TPG.  *In re Shawe & Elting LLC*, 2015 WL 4874733, at *1.

Thereafter, in January 2016, Chancellor Bouchard conducted a two-day evidentiary hearing relating to a motion by Elting requesting an award of sanctions against Shawe.  In July 2016, the Court issued a 56-page memorandum opinion, sanctioning Shawe for extreme litigation misconduct.  In short, the Court found that Shawe "acted in bad faith and vexatiously during the course of the litigation," *In re Shawe & Elting LLC*, 2016 WL 3951339, at *1 (Del. Ch. July 20, 2016) (attached as Exhibit C), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 142 (Del. 2017) (attached as Exhibit D), and determined that Shawe's conduct -- which included, among other things, "intentionally attempting to destroy information on his laptop computer after the Court had entered an order requiring him to provide the laptop for forensic discovery" and "repeatedly lying under oath" -- "constitute[d] unusually deplorable behavior."  *In re Shawe & Elting LLC*, 2016 WL 3951339, at *13.  The Court ordered Shawe to pay Elting the following amounts as a sanction:  (1) 100% of her attorneys' fees and expenses (including computer expert expenses) incurred in connection with the litigation of Elting's sanctions motion; and (2) 33% of her attorneys' fees and expenses incurred in connection with the litigation and trial of the merits (including computer expert expenses but not including other experts) from December 2, 2014 up to the date on which the Court issued the August 2015 memorandum opinion.  *Id.* at *20.  The total fees assessed against Shawe exceeded $7 million.  *See Shawe v. Elting*, 157 A.3d at 144.  Shawe appealed this sanction to the Delaware Supreme Court, which affirmed the Chancellor's ruling in a unanimous decision issued earlier this year.  *See id.* at 145, 152.

## **ARGUMENT**

### I.     **IMPROPER MOTIVES BEHIND THE COMPLAINT**

The Complaint here is nothing more than a thinly-veiled effort to repackage the same issues that were fully litigated in the Court of Chancery and affirmed by the Delaware Supreme Court, under the guise of a purported tort claim. Coggins is well aware of this background, given that he represented Shawe's mother, Shirley Shawe, in the Court of Chancery litigation—indeed, he is listed as counsel to Ms. Shawe in Chancellor Bouchard's July 2016 sanctions opinion.

Not only is the Complaint an improper attempt to re-litigate matters that already have been decided, but it also is a clear abuse of process. Since the Chancellor's August 2015 opinion ordering the sale of TPG, Shawe and those associated with him have habitually filed baseless lawsuits aimed at attacking those who are associated with Elting, as well as any other person whom Shawe believes to have interfered with his plan to acquire Elting's 50% interest in TPG at a fire sale price. To date, Shawe, his mother, and/or his cohorts have filed numerous different suits in an attempt to impede the Court-ordered sale of TPG and to harass Elting and her advisors. His frivolous lawsuits against Chancellor Bouchard, the Court-appointed custodian, and the Delaware Secretary of State, among others, have already been dismissed.    (Exhibits E and F).

In addition, Shawe is now prosecuting a claim for defamation against Elting's New York attorneys. *Shawe v. Kramer Levin Naftalis & Frankel LLP, et al.*, No. 151025/2017 (Sup. Ct. N.Y. Cty. Mar. 31, 2017). In a separate series of lawsuits, Shawe sued Elting and her attorneys for malicious prosecution, while his mother filed derivative actions against Elting's husband and financial consultant, as well as their respective employers. While those claims have since been dismissed with prejudice, *see Shawe v. Elting, et al.*, 2017 WL 2882221 (Sup. Ct. N.Y. Cty. June 29, 2017) (attached as Exhibit G), they represent only a fraction of the claims that Shawe has

improperly pursued or instigated with the aim of harassing Elting and her representatives, needlessly increasing the costs of litigation and interfering with the Court-ordered sale process.

The Complaint filed by Coggins on behalf of Shawe against PAC and Shannon is just the latest example of Shawe's harassing and vexatious litigation misconduct. Having filed—and lost—meritless litigation against Elting's primary legal counsel in New York, it is not altogether surprising to find Shawe now pursuing a separate but equally baseless lawsuit against Elting's legal counsel in Delaware. Although Shawe's action is not surprising, it is highly improper. The Chancellor has already noted that Shawe's behavior is "disturbing and contrary to expected norms of behavior." *In re Shawe & Elting LLC*, 2015 WL 4874733, at *34; *see also* Tr. of Telephonic Oral Arg., Feb. 2, 2015, at 50:9-10 ("[Shawe] just doesn't seem to conform to normal expectations of behavior.") (attached as Exhibit H).

## II. THE COMPLAINT'S CLAIMS AND CONTENTIONS ARE FRIVOLOUS

In addition to serially filing groundless litigation against Elting and her representatives, Shawe also has launched several collateral challenges in a misguided attempt to reverse the loss he suffered in the Delaware state courts. These challenges are grounded in Shawe's distorted notion that, as one judge put it, "the Delaware proceedings, and its notable holdings, never occurred." *Shawe v. Elting, et al.*, 2017 WL 2882221, at *3.

Of course, the Delaware proceedings in the Court of Chancery did occur. As a result, courts have already dismissed several of Shawe's lawsuits as "essentially appeals from state-court judgments," *Shawe v. Pincus*, 2017 WL 4251440, at *2 (D. Del. Sept. 26, 2017) (internal quotation marks and citation omitted) (attached as Exhibit I), and, in so doing, described claims similar to those alleged in this Complaint as "replete with revisionist history that borders on downright frivolity." *Shawe v. Elting, et al.*, 2017 WL 2882221, at *3. One of those courts also issued a

5

clear warning to Shawe in an effort to deter him from filing future similar frivolous litigation: "[G]iven the borderline frivolity of these lawsuits, Philip and Shirley Shawe are cautioned that the maintenance of future suits in this court that are barred by the outcome of the Delaware action may result in sanctions and a filing injunction. It is time for this saga to end." *Id.* at *28.

Shawe and Coggins simply ignored that admonition in violation of Rule 11. By filing the Complaint—over a year after the Delaware Court of Chancery twice rejected the very same arguments—Shawe has once again demonstrated his contempt for the judicial process. As the Complaint itself acknowledges, Shawe's assertion that PAC was required to provide additional detail for its fees was already addressed and rejected in the Court of Chancery litigation. Shawe objected to Elting's fee request then on the same basis he does now, and the Court of Chancery overruled his objection. Among other things, as explained in its submissions to the Court of Chancery, PAC only represented Elting in the Delaware litigation. Therefore, unlike Elting's other counsel, PAC did not need to separately break out its fees between the Delaware litigation and the separate cases filed by Shawe in other jurisdictions. In this regard, it is important to note that Shawe's counsel also were required to submit affidavits setting forth their fees. Shawe's Delaware counsel (Lisa Schmidt of Richards, Layton & Finger, P.A.) submitted an affidavit without *any* supporting time entries, and she specifically stated that Richards, Layton "applied the *same* calculation method as [Potter Anderson] to determine [its] fees in connection with the Merits Trial and Sanctions Trial." (Exhibit J; Schmidt Aff. ¶ 5 (attached hereto) (emphasis added)).

The Court of Chancery also denied Shawe's subsequent motion to alter or amend the Court's final order and judgment based on the same arguments now raised in the Complaint, deeming it meritless. The Court noted that, even if it accepted Shawe's assertion that PAC's fees included some amounts attributable to the mediation or Shirley Shawe, the amounts at issue were

6

"*de minimis*" and likely "less than $25,000." (Sept. 20, 2016 Order, at ¶ 5) (attached as Exhibit K). Thus, the cost of this litigation will far exceed the purported amount at issue, which serves to further highlight Shawe's improper motive in pursuing this litigation.

The Delaware Supreme Court affirmed the Court of Chancery's sanctions award (Exhibits B and D hereto), and Shawe's attempt to appeal that decision to the United States Supreme Court was rejected. (Exhibit L hereto).

### III. THE COMPLAINT'S FACTUAL ALLEGATIONS LACK ANY EVIDENTIARY BASIS

Shawe's allegations in the Complaint are meritless. As Coggins was certainly aware when he filed the Complaint (because he was involved in the prior Chancery Court proceedings), the same issues raised in the Complaint were twice presented to and rejected by the Delaware Court of Chancery -- and Shawe has unsuccessfully exhausted all appeals. A lawyer acting in good faith would immediately recognize that Shawe's attempt to re-litigate this same meritless claim in a different Court, as well as his attempt to re-characterize the same claim as a purported "Prima Facie Tort," are barred for numerous independent reasons, most notably, various abstention doctrines, *res judicata,* and the *Rooker-Feldman* doctrine.[1] In fact, this Court and the U.S. District Court for the Southern District of New York have recently dismissed similar improper attempts by

---

[1] Nor could Coggins or Shawe assert in good faith that the amount at issue in this case meets the $75,000 minimum for diversity jurisdiction. (Compl. at ¶ 10). As set forth above, the Court of Chancery noted that, even if it accepted Shawe's assertion that PAC's fees included some amounts attributable to the parties' litigations in other jurisdictions, the amounts at issue would be "*de minimis*" and likely "less than $25,000." (Sept. 20, 2016 Order (Ex. K), at ¶ 5). Clearly, Coggins and Shawe filed in federal court in order to avoid review by the Court of Chancery—which already is intimately aware of the factual and procedural record of the prior proceedings, as well as Shawe's harassing and vexatious litigation tactics and unremitting campaign to cause "constant pain" for Elting and those associated with her. *In re Shawe & Elting LLC*, 2015 WL 4874733, at *6, *31.

7

Shawe to re-litigate issues that were raised in the Court of Chancery -- facts of which Coggins surely is (or at least should have been) aware.

That leads to the inescapable conclusion that Shawe filed the Complaint (like his numerous other complaints) for the improper purpose of harassing Elting and her advisors -- and to cause them to incur significant additional expenses. Although that fact alone fully supports an award of sanctions, Shawe's conduct here is even more troubling because he also filed the Complaint in furtherance of his improper public attack on the Chancellor and the Court of Chancery. This purpose is revealed by Paragraph 42 and Footnote 2 of the Complaint, which gratuitously assert that Shannon's "relationship" with Chancellor Bouchard "*engenders speculation*" about "*favoritism*" and the motivations behind the Court of Chancery's decision. The purported "relationship" that forms the basis of that accusation is based on three misleading assertions:

1. Mr. Shannon and Chancellor Bouchard, upon information and belief, have known each other since they represented different clients in *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693 (Del. Ch. 2005);

2. Both served on the board of St. Francis Hospital; and

3. Both appeared as co-panelists at the annual Tulane Law School Corporate Law Institute in New Orleans, Louisiana (including while the Chancery action was pending).

None of these allegations "engenders speculation" of improper conduct.

*First*, the fact that two Delaware attorneys were involved in the same litigation twelve years ago, and that one of those attorneys was elevated to the bench *a decade later*, is not a basis for impugning the judicial officer who made a decision that Shawe dislikes. Moreover, even a cursory investigation of this assertion would have revealed that Shawe's counsel in the Chancery litigation, Richards Layton & Finger, P.A., likewise was involved in the *Disney* litigation—*including both of the partners who represented Shawe, Greg Williams and Lisa Schmidt*—underscoring the speciousness of this allegation.

*Second*, it is true that Chancellor Bouchard and Mr. Shannon both served on the board of St. Francis Hospital, but not at the same time. And, if service on the same non-profit board is somehow an indicia of bias or collusion, it is worth noting that Lisa Schmidt, *one of the lead attorneys who represented Shawe in the Chancery litigation*, serves on the board of the related St. Francis Foundation. The Complaint, however, fails to disclose that fact.

*Third*, Chancellor Bouchard and Mr. Shannon did appear as co-panelists at an annual conference on corporate law several years ago. It is difficult to comprehend how this fact is suggestive of nefarious or improper behavior; if anything, it seems to suggest that a prestigious corporate law conference recognized that its attendees would be interested in hearing from a highly regarded jurist and a group of corporate law practitioners. The Complaint conspicuously fails to disclose that Greg Williams, *Shawe's counsel at Richards Layton*, also served on that same panel.

As noted above, the assertions in Paragraph 42 and Footnote 2 are extremely misleading and are clearly intended (consistent with Shawe's numerous other public statements) to publicly impugn the character and independence of the Chancellor. It is hard to imagine a more improper use of litigation. If Coggins was not aware of the facts set forth above when he filed the Complaint, then he did not conduct even a minimal investigation, as required under Rule 11, before publicly attacking the Chancellor and questioning his independence. If Coggins was aware of the foregoing facts, then the only reasonable conclusion is that he intentionally made misleading statements in the Complaint for the purpose of publicly attacking the Chancellor. In either case, Coggins' conduct is plainly sanctionable under Rule 11. However, despite having been provided an opportunity to withdraw the Complaint, Coggins did not, necessitating this Motion.

## IV. SANCTIONS ARE WARRANTED

Federal Rule of Civil Procedure 11 prohibits attorneys from filing complaints that are designed to achieve an improper purpose, contain frivolous claims and assertions, or lack evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3); *see also Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 652 (D. Del. 2014) ("The Third Circuit has made clear that the goal of Rule 11 is to impose on counsel a duty to look before leaping." (internal quotation marks and citation omitted)). In determining whether attorney conduct violates Rule 11, courts in this Circuit ask whether the conduct was "objectively reasonable under the circumstances." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994); *see also Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155-56 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." (internal quotation marks and citation omitted)). Dismissal is an available sanction under Rule 11. Fed. R. Civ. P. 11(c)(4) (addressing the nature of allowable sanctions); *see also Vehicle Operation Techs. LLC*, 67 F. Supp. 3d at 653 (dismissing suit with prejudice as sanction); *Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988) ("Other sanctions that could be appropriate . . . include . . . dismissal of baseless claims[.]"). Dismissal is an appropriate sanction when the entire case is frivolous, because any lesser sanction would be ineffective. *See Vehicle Operation Techs. LLC*, 67 F. Supp. 3d at 653 ("Furthermore, as here the entire suit is objectively baseless, any lesser sanction would be ineffective.").

Rule 11 also contemplates the award of monetary sanctions against an attorney, law firm, and party when a suit is frivolous. Fed. R. Civ. P. 11(c)(1) and (c)(4); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (explaining that litigation "can be an expensive proposition" and that "[d]efending against baseless claims" subjects the defendant to

"undue costs – precisely the scenario Rule 11 contemplates"). If a Rule 11 sanction is found, an award of monetary sanctions is within the discretion of the Court. *See, e.g., Lieb*, 788 F.2d at 157. With that in mind, "a court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also Lieb*, 788 F.2d at 157 ("The tone of the rule makes clear that although trial judges still retain substantial discretion, its exercise is not directed more to the nature and extent of sanctions than to initial imposition."). Where, as here, the Complaint asserts frivolous claims in violation of Rule 11(b), the sanction must be paid by attorney personally.

Filing injunctions similarly are an appropriate sanction in certain circumstances—such as those here where litigants vexatiously file repetitive litigation re-raising issues that have been previously adjudicated. *See Malley v. New York City Bd. of Educ.*, 112 F.3d 69 (2d Cir. 1997) (finding district court's issuance of injunction appropriate where plaintiff persisted despite adverse judgments in meritless and repetitious litigation); *Castro v. United States*, 775 F.2d 399, 408-10 (1st Cir. 1985) ("Given the frivolous and vexatious nature of this and prior cases filed by appellants, and appellants' propensity to file repeated suits against appellees involving the same or similar claims, the district court did not abuse it[s] discretion in concluding that an injunction was warranted"); *In re Martin-Trigona*, 737 F.2d 1254, 1261-62 (2d Cir. 1984) (approving injunction restricting new actions in all federal courts, finding such injunction appropriate where plaintiff "abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings"); *Lacks v. Fahmi*, 623 F.2d 254, 256-57 (2d Cir. 1980) (affirming district court's issuance of permanent injunction against further lawsuits relating to issues raised and decided by state courts); *Mazur v. Woodson*, 191 F. Supp. 2d 676, 684 (E.D. Va. 2002) (applying sanctions of pre-filing injunction against repeat-litigation filers); *Pentagen Techs.*

*Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001) ("Pentagen's long history makes it clear that mere dismissals and/or monetary sanctions will not alone be an effective means of deterring future frivolous litigation. . . . Therefore, . . . the Court enjoins Pentagen from filing any further litigation without permission of the Court.").

The Complaint filed in this case violates all three Rule 11 standards and severe sanctions are warranted. Indeed, it is hard to imagine a more compelling case for the imposition of Rule 11 sanctions. Shawe has engaged in unprecedented scorched earth litigation tactics filing numerous frivolous suits in an attempt to harass Elting and her representatives, and to interfere with the sale of TPG as ordered by the Court of Chancery. The Complaint is a patently improper attempt to retaliate against and harass Elting's Delaware counsel -- and to publicly impugn the character and independence of Chancellor Bouchard. The Complaint's purported claim of a "Prima Facie Tort" plainly seeks to re-litigate in a different Court the same issues that were presented and decided by the Court of Chancery over a year ago, which resulted in a final judgment entered by the Court of Chancery and affirmed by the Delaware Supreme Court.

Even if it were not otherwise obvious that Shawe's claim is meritless and cannot be pursued in good faith, several courts have now dismissed similar attempts by Shawe to challenge the Court of Chancery's decisions in those other courts, including deeming the lawsuits frivolous and expressly warning Shawe against pursuing such claims. Given these facts, Shawe and Coggins clearly did not have a good faith basis to file the Complaint, which they almost certainly knew would be dismissed like Shawe's other improper lawsuits. Thus, as detailed above, the Complaint was plainly filed for an improper purpose to harass Elting's counsel and publicly impugn the character and independence of the Chancellor.

In light of Shawe's undisputed conduct and his repeated abuse of the litigation process, it is not enough to simply dismiss the Complaint and award monetary sanctions against him and Coggins. There can be no doubt that Shawe will simply file more frivolous litigation until he is enjoined from doing so. Shawe's abusive conduct must be stopped. Accordingly, in addition to other appropriate relief, Defendants respectfully submit that this Court should enter a nationwide injunction against Shawe and any person acting on his behalf enjoining them from filing further litigation in any court other than the Court of Chancery with regard to any issues already raised in the Court of Chancery litigation or relating to any of the Court of Chancery's prior rulings.

## CONCLUSION

The Complaint is exactly the sort of improper and frivolous filing Rule 11 seeks to discourage. Sanctions in the form of dismissal of this case with prejudice, an award of monetary sanctions against both Shawe and Coggins equal to at least all of Defendants' attorneys' fees and expenses, and a nationwide filing injunction are warranted to address the improper filing of the Complaint by Shawe and Coggins and deter them from engaging in such behavior in the future.

POTTER ANDERSON & CORROON LLP

By: */s/ Jennifer Gimler Brady*
    Jennifer Gimler Brady (#2874)
    1313 North Market Street
    Hercules Plaza, 6th Floor
    Wilmington, DE 19801
    (302) 984-6000
    jbrady@potteranderson.com

Dated: November 7, 2017
5434674

*Attorneys for Defendants Potter Anderson & Corroon LLP and Kevin R. Shannon*